IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| EL CRUZ LOGAN, | ) |
|       Plaintiff, | ) ) ) |
| -vs- | )   Case No. CIV-23-804-F ) |
| OKLAHOMA CITY POLICE, DEPARTMENT, ex rel. CITY OF OKLAHOMA CITY, JASON HODGES, DANIEL PONDER, AUTUMN SHEETS, | ) ) ) ) ) ) |
|       Defendants. | ) |

## **ORDER**

This action arises out of the arrest of plaintiff El Cruz Logan (Logan) on September 17, 2021. According to the complaint, Logan is a "YouTube Journalist" who "regularly publishes stories about fraud, waste and abuse in government agencies." Doc. no. 1, ¶ 7. He is "what is commonly referred to as a Public Service Auditor who makes it a regular practice to video and comment upon the state of affairs and conditions of equipment related to governmental agencies." *Id*. On September 17th, Logan was "present upon a parking lot leased by the City of Oklahoma City" for parking police vehicles. *Id*. He was on the property for the purpose of conducting an "audit" of the condition of governmental vehicles. *Id*. at ¶ 23. There was no "posted signage that the property was closed to the public, only a small sign indicating that police vehicles only were to be parked thereon." *Id*.

Logan alleges that defendant Jason Hodges (Hodges), a law enforcement officer for the City of Oklahoma City Police Department who was dressed in plain clothes, claimed to be a contractor working in the police department. According to

Logan, Hodges asserted that his rights were being violated by Logan videotaping in the parking lot.  After Hodges temporarily left the parking lot, and "presumably notified other [police] officers," defendant Autumn Sheets (Sheets), a law enforcement officer with the City of Oklahoma City Police Department, approached Logan and advised him that he was trespassing and needed to leave the premises.  Doc. no. 1, ¶ 11.  Logan advised Sheets that the parking lot was considered public property and denied the request to leave the property.  Logan also stated that he would leave under threat of arrest.  Despite repeated inquiries by Logan if "Defendants" were stating they would arrest him if he did not leave, "Defendants" refused to answer.  *Id*.  Logan alleges that, without further provocation, he was placed under arrest by Hodges and Sheets.  He also alleges that he was unlawfully detained by Hodges, Sheets and Daniel Ponder (Ponder), another law enforcement officer with the City of Oklahoma City Police Department, and they caused him to be "falsely imprisoned for a period in excess of 10 hours." Doc. no. 1, ¶ 8.  His camera was also confiscated.  *Id*., ¶ 12.  According to Logan, defendants made it known to him, prior to his arrest, that they knew who he was.  They were fully aware that he recorded and published online reports regarding fraud, waste and abuse in government agencies.

In his complaint, Logan alleges that he was arrested for trespassing on public property in violation of Chapter 30, Section 33 of the Oklahoma City Municipal Code.  The charges against him were tried before the municipal court on January 10, 2022.  Logan was acquitted of the charges.

Logan, appearing *pro se*, commenced an action, Case No. CIV-22-1083-F, against the Oklahoma City Police Department and the individual defendants pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights.  On April 18, 2023, the court dismissed the action without prejudice due to service of process issues.  Logan obtained counsel and timely re-filed the action.  In his

complaint in this action, Logan has named the City of Oklahoma City (City), rather than the Oklahoma City Police Department, as a defendant. He alleges violations of rights by the City and the individual defendants under the First Amendment rights (freedom of speech and freedom of the press), Fourth Amendment (unlawful seizure and detention), and Fourth Amendment (malicious prosecution). In addition to actual damages, Logan also seeks punitive damages.

In response to Logan's complaint, the individual defendants Hodges, Sheets and Ponder have moved to dismiss the complaint based on qualified immunity. Doc. no. 11. Logan has responded, opposing dismissal. Doc. no. 12. The individual defendants have replied. Doc. no. 13. Upon due consideration of the parties' submissions, the court makes its determination.

I.

The individual defendants seek dismissal of Logan's claims under Rule 12(b)(6), Fed. R. Civ. P., arguing he has failed to state any claim upon which relief can be granted. When reviewing a Rule 12(b)(6) motion, the court accepts "all well-pleaded factual allegations in the complaint as true, and [] view[s] them in the light most favorable to the nonmoving party." Irizarry v. Yehia, 38 F.4th 1282, 1287 (10th Cir. 2022) (quotations marks and citation omitted). "'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). A claim is plausible when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678

A § 1983 individual defendant may assert an affirmative defense of qualified immunity via a Rule 12(b)(6) motion. When a defendant invokes qualified immunity, it creates a presumption that the defendant is immune from suit. Truman v. Orem City, 1 F.4th 1227, 1235 (10th Cir. 2021). To overcome that presumption,

3

the plaintiff must show "(1) the defendant's actions violated a constitutional or statutory right, and (2) that right was clearly established at the time of the defendant's complained-of conduct." Id. "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Irizarry, 38 F.4th at 1293 (quotation omitted). "The law is clearly established when a Supreme Court or Tenth Circuit precedent is on point or the alleged right is clearly established from case law in other circuits." Id. (quotation omitted).

"To determine whether the law is clearly established, the relevant precedent is considered on point if it involves *materially similar conduct* or applies with *obvious clarity* to the conduct at issue." Irizarry, 38 F.4th at 1924 (emphasis in original).

II.

Initially, defendants contend that they are entitled to qualified immunity on Logan's First Amendment claims because Logan cannot show a violation of clearly established law. Defendants point out that Logan specifically relies upon the Tenth Circuit's decision in Irizarry v. Yehia, *supra*., to support his claims. While defendants recognize that in Irizarry, the Tenth Circuit held that a First Amendment right to film the police performing their duties in public was clearly established as of 2019, defendants contend that a careful review of Irizarry and prior Tenth Circuit cases demonstrates that a reasonable officer would not have understood in 2021 that the actions taken by defendants with respect to Logan were prohibited. Specifically, defendants point out that Irizarry was not decided until July 2022, almost a year after Logan's arrest, and in March 2021, shortly before Logan's arrest, the Tenth Circuit ruled in Frasier v. Evans, 992 F.3d 1003, 1020 (10th Cir. 2021), that the right to record police officers performing their official duties was not clearly established as of 2014. Defendants further point out that the Tenth Circuit, in the Frasier decision,

4

specifically stated it was not considering or opining on whether a First Amendment right to record the police in performing their duties in public spaces existed.

But, even if the court were to conclude that Irizarry is controlling, defendants assert that the right recognized by the Tenth Circuit is the right to record the police performing their duties (specifically a traffic stop) in public spaces. They point out that the right to film the police is subject to reasonable time, place, and manner restrictions, and argue that nothing in Irizarry extends the scope of the protected activity to the circumstances of this case.

Logan responds that his First Amendment right to film "matters of public concern, and in particular [matters] occurring on public property, while explicitly acknowledged in [Irizarry] as to filming police, has long been clearly established." Doc. no. 12, ECF p. 5. Logan specifically cites the Supreme Court's decision in Thornhill v. Alabama, 310 U.S. 88, 101-02 (1940), wherein the Supreme Court stated, "[t]he freedom of speech and of the press guaranteed by the Constitution embraces at the least the liberty to discuss publicly and truthfully all matters of public concern without previous restraint or fear of subsequent punishment." Logan asserts that he was present in the subject parking lot as a public service auditor. He maintains that he "was in the process of filming the condition of police vehicles to make a public report and record of how tax dollars are being spent by Oklahoma City and how well they maintained city owned equipment." Doc. no. 12, ECF p. 8. Logan posits that the matters he was there to film were of public concern, and defendants violated his First Amendment right to film matters of public concern by arresting him.

Upon review, the court finds that Logan has failed to show that it was clearly established that filming police vehicles in a parking lot was constitutionally protected activity under the First Amendment. Like defendants, the court recognizes that the Tenth Circuit determined that the right to film the police performing their

duties in public was clearly established in 2019.  However, unlike defendants, the court concludes that even though the Irizarry decision was issued after Logan's arrest, it is bound by the Tenth Circuit's holding that as of 2019, the right to film the police performing their duties in public and, in particular, the right to film the traffic stop at issue in Irizarry, was clearly established.  Nonetheless, even though the Tenth Circuit determined that the right to film the police performing their duties in public was clearly established at the time of the incident in this case, Logan does not allege that he was filming police officers performing their duties in public, but rather he was filming the condition of the police vehicles parked in the parking lot.  And the parking lot leased by the City was restricted to the parking of police vehicles only.[1]  The court concludes that Irizarry is not on point as it does not involve materially similar conduct or apply with obvious clarity to the conduct at issue.  Further, it does not place the "constitutional question 'beyond debate.'"  Irizarry, 38 F.4th at 1294 (quoting Cummings v. Dean, 913 F.3d 1227, 1239 (10th Cir. 2019)).

According to Logan, First Amendment protection extends to filming the condition of police vehicles because Supreme Court precedent establishes a right to film "matters of public concern."  However, "the Supreme Court has repeatedly admonished courts 'not to define clearly established law at a high level of generality.'"  Corona v. Aguilar, 959 F.3d 1278, 1286 (10th Cir. 2020) (quoting Kisela v. Hughes, 138 S.Ct. 1148, 1152 (2018)).  "'[T]he clearly established law

---

[1] In his papers, Logan suggests the parking lot is public property, citing Oklahoma City Municipal Code § 30-31.  Subsection 5 of that section defines public property as "property which is dedicated to the public use and over which the Federal, State, or municipal government, or any political subdivision thereof, exercises control and dominion, including school property."  Logan has not alleged any facts to establish the parking lot was dedicated to the public use.  And according to Logan's allegations, the parking lot had a small sign indicating the parking lot was for police vehicles only.  Further, "traditional public fora are places that 'by long tradition or by government fiat have been devoted to assembly and debate,' such as streets, sidewalks, and parks."  Fenn v. City of Truth or Consequences, 983 F.3d 1143, 1148 (10th Cir. 2020) (quoting Perry Ed. Ass'n v. Perry Local Ed. Ass'n, 460 U.S. 37, 45 (1983)).

must be "particularized" to the facts of the case.'" Id. (quoting White v. Pauly, 137 S.Ct. 548, 552 (2017)). The Supreme Court authority relied upon by Logan to support clearly established law, including specifically, Thornhill v. Alabama, does not demonstrate that the specific right at issue in this case—right to film the condition of police vehicles in a parking lot leased by a municipality—was clearly established.

The court acknowledges that the Supreme Court has recognized that "'general statements of the law are not inherently incapable of giving fair and clear warning to officers' that their conduct violates a constitutional right, and that such statements provide the required notice when 'the unlawfulness' of their conduct is 'apparent' from pre-existing law." A.N. by and through Ponder v. Syling, 928 F.3d 1191, 1198 (10th Cir. 2019) (quoting Pauly, 137 S.Ct. at 552). "In other words, general statements of the law can clearly establish a right for qualified immunity purposes if they apply with obvious clarity to the specific conduct in question." Id. (quotation and alteration omitted); see also, Irizarry, 38 F.4th at 1294. However, the court concludes that the Supreme Court authority cited by Logan does not provide "fair and clear warning" to the defendants that their conduct violated Logan's First Amendment rights. The unlawfulness of the defendants' conduct, in the court's view, is not apparent from the preexisting law.[2]

In his papers, Logan also cites two Eleventh Circuit cases, Williamson v. Mills, 65 F.3d 155 (11th Cir. 1995), and Blackston v. State of Ala., 30 F.3d 117, 120 (11th Cir. 1994), one Ninth Circuit case, Fordyce v. City of Seattle, 55 F.3d 436, 439 (9th Cir. 1995), and various district court cases, e.g., Iacobucci v. Boutler, Case No.

---

[2] The court notes that Tenth Circuit in Irizarry did not rely "on general First Amendment principles to show that clearly established law protects the filming of police." Irizarry, 38 F.4th at 1295 n. 14. Further, the Tenth Circuit in Frasier v. Evans, 992 F.3d at 1021, specifically concluded that "general First Amendment principles protecting the creation of speech and the gathering of news" did not establish a First Amendment right to record police officers performing their official duties in public spaces.

A. 94-10531-PBS, 1997 WL 258494 (D. Mass. Mar. 26, 1997), Thompson v. City of Clio, 765 F.Supp. 1066, 1070-71 (M.D. Ala 1991), Lambert v. Polk County, 723 F. Supp. 128, 133 (S.D. Iowa 1989), and Turner v. Driver, Case No. 15-CV-824-A, 2016 WL 722154 (N.D. Tex. Feb. 19, 2016), to support that "[t]he First Amendment protects the right to gather information about what public officials do on public property, and specifically, a right to record matters of public interest." Doc. no. 12, ECF p. 6.  But neither the circuit cases nor the district court cases cited constitute clearly established law.  See, Irizarry, 38 F.4th at 1294 ("[T]he weight of authority from other circuits may clearly establish the law when at least six other circuits have recognized the right at issue."); Crane v. Utah Department of Corrections, 15 F.4th 1296, 1306 (10th Cir. 2021) ("District court cases lack the precedential weight necessary to clearly establish the law for qualified immunity purposes.").

III.

Defendants also contend that they are entitled to qualified immunity on Logan's Fourth Amendment claims for unlawful seizure and detention of his person and unlawful seizure of his camera.  Logan's claims turn on whether defendants had probable cause.

Initially, Logan suggests that defendants lacked probable cause to arrest and detain him because he was found not guilty of trespassing on private property by the City's municipal court.  He asserts that based on the Supreme Court's decision in Taylor v. Sturgell, 553 U.S. 880, 893-94 (2008), defendants are bound by the municipal court's ruling, even though they were not parties to the criminal action, asserting they have substantive legal relationship to the City, who was a party to the criminal action, and they were adequately represented by the City in that action.

However, the Taylor decision involved the preclusive effect of a federal-court judgment.  553 U.S. at 891.  Here, the issue is the preclusive effect of a municipal-court determination.  Oklahoma law applies to that determination.  McFarland v.

8

Childers, 212 F.3d 1178, 1185 (10th Cir. 2000); Bell v. Dillard Department Stores, Inc., 85 F.3d 1451, 1453 (10th Cir. 1996).  Under that law, "once a court has decided an issue of fact or law necessary to its judgment, *the same parties or their privies* may not relitigate the issue in a suit brought upon a different claim."  McFarland, 212 F.3d at 1185; Bell, 85 F.3d at 1454 (emphasis added).  However, none of the moving defendants were parties to Logan's municipal-court proceedings.  And under Tenth Circuit precedent, applying Oklahoma law, law enforcement officials sued in their individual capacities are not considered to be in privity with the governmental entity that was a party to the municipal-court proceeding.  *Id*.  Therefore, contrary to Logan's argument, defendants are not precluded under Oklahoma law from relitigating the issue of probable cause with respect to Logan's unlawful seizure and detention claims.[3]

"Because probable cause is measured by an objective standard, an arrest is lawful if the officer had probable cause to arrest for any offense, not just the offense cited at the time of arrest or booking."  Mglej v. Gardner, 974 F.3d 1151, 1161 (10th Cir. 2020).  In their briefing, defendants recognize that Logan was arrested for trespassing on public property, but they ask the court to take judicial notice that Logan was charged with trespassing on private property.  The court does take judicial notice, pursuant to Fed. R. Evid. 201(b), of "Citation 18642093X-01" indicating Logan's offense as trespassing on private property. Doc. no. 11-1.

Further, in the context of a qualified immunity defense, the court must "ascertain whether a defendant violated clearly established law by asking whether there was arguable probable cause for the challenged conduct."  Stonecipher v. Valles, 759 F.3d 1134, 1141 (10th Cir. 2014) (quotation marks and citation omitted).

---

[3] Even if defendants were parties to the prior proceedings or in privity with the City, the doctrine of issue preclusion would still not apply.  Logan has not presented any order or judgment signed by the municipal judge which addresses the issue of probable cause.  *See*, Bell, 85 F.3d at 1454 (ruling not set forth in an order signed by the judge not given preclusive effect.

9

"Arguable probable cause is another way of saying that the officers' conclusions rest on an objectively reasonable, even if mistaken, belief that probable cause exists." Id. "Arguable probable cause exists where a reasonable police officer in the same circumstances and with the same knowledge and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in light of well-established law." Cronick v. Pryer, 99 F.4th 1262, 1270 (10th Cir. 2024). "A defendant is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to arrest or detain the plaintiff." Stonecipher, 759 F.3d at 1141 (quotation marks omitted).

The court concludes that probable cause and, certainly, arguable probable cause existed to arrest and detain Logan for trespassing on private property. A reasonable officer could and would have believed that probable cause existed to arrest and detain Logan for trespassing on private property. As previously discussed, Logan has failed to show he had a clearly established right to film the condition of police vehicles parked in a parking lot leased by a municipality. In addition, the City's Municipal Code, Section 30-32, provides that "[n]o person shall trespass on private property." Subsection 3 of Section 30-31 defines private property as "any property other than public property." As previously noted, subsection 5 of Section 30-31 defines public property as "property which is dedicated to the public use and over which the Federal, State, or municipal government, or any political subdivision thereof, exercises control and dominion, including school property." Logan does not allege any facts to establish or support a reasonable inference that the parking lot was dedicated to the public use. Instead, he alleges that a small sign indicated the lot was for police vehicles only. Further, subsection 7 of Section 30-31 defined trespass as "[e]ach and every actual entry upon the public or private property without the express or the implied consent of the owner or other person responsible for the property . . . [.]" Logan does not allege any facts to establish or support a reasonable

inference that he was on the parking lot with the consent, express or implied, of the City.  The complaint allegations reveal that Logan denied the request by Sheets to leave the property.   The court thus concludes that based on the factual allegations in the complaint, there was probable cause and, certainly, arguable probable cause for the arrest and detention of Logan pursuant to Section 30-32 for trespassing on private property, and consequently, defendants are entitled to qualified immunity as to Logan's arrest and detention.

Further, the court concludes that individual defendants are entitled to qualified immunity as to the unlawful seizure of Logan's camera.  Logan has not carried his burden to show defendants violated clearly establish law when they seized the camera during his arrest and detention.  *See*, Gutierrez v. Cobos, 841 F.3d 895, 903 (10th Cir. 2016) ("Plaintiffs failed to carry their burden of showing that [the defendants] violated clearly established federal law because their counsel did not make any legal argument in the district court to rebut qualified immunity.").

## IV.

Logan has also alleged a malicious prosecution claim against the individual defendants.  Again, defendants have raised the qualified immunity defense with respect to the malicious prosecution claim.  To state a malicious prosecution claim brought under the Fourth Amendment, a plaintiff must show "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." Stonecipher, 759 F.3d at 1146.  Because, as previously discussed, probable cause as well as arguable probable cause existed for the original arrest, continued confinement, and prosecution of Logan for trespassing on private property, the court concludes that defendants are entitled to qualified immunity on the malicious prosecution claim.

V.

In his response, Logan requests the court to hold its ruling in abeyance to allow him to "conduct discovery of the officers in relation to the issues asserted herein" and to submit a supplemental brief to the court.

The protection of qualified immunity gives officials "a right, not merely to avoid standing trial, but also to avoid the burdens of such pretrial matters as discovery." Holland ex rel. Overdorff v. Harrington, 268 F.3d 1179, 1185 (10th Cir. 2001) (quotations marks and citations omitted). An initial determination must be made that qualified immunity will not apply before discovery is permitted. *Id*. Because the court concludes that defendants are entitled to qualified immunity on all of Logan's claims against the individual defendants, the court finds that Logan's request for discovery should be denied.

VI.

Based on the foregoing, the Motion to Dismiss of Defendants Hodges, Ponder, and Sheets (doc. no. 11) is **GRANTED**. All claims against defendants Jason Hodges, Daniel Ponder, and Autumn Sheets are dismissed with prejudice pursuant to Rule 12(b)(6), Fed. R. Civ. P., based on the doctrine of qualified immunity.

Plaintiff's request to hold the court's ruling in abeyance to allow him to conduct discovery is **DENIED**.

DATED this 12th day of June, 2024.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

23-0804p001 rev_.docx